# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Todd Pysher | : | |
| | : | |
| | : | |
| | : | |
| v. | : | No. 1237 C.D. 2017 |
| | : | Argued: December 11, 2018 |
| Clinton Township Volunteer | : | |
| Fire Company, | : | |
| Appellant | : | |


BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge[1]
HONORABLE ANNE E. COVEY, Judge
HONORABLE ELLEN CEISLER, Judge


OPINION BY
JUDGE COHN JUBELIRER                    FILED:  May 8, 2019

Clinton Township Volunteer Fire Company (Fire Company) appeals from the August 9, 2017 Order of the Court of Common Pleas of Lycoming County (trial court), which affirmed the Final Determination of the Office of Open Records (OOR) and ordered Fire Company to turn over documents responsive to a Right-to-Know Law[2] (RTKL) request made by Todd Pysher (Requester).  At issue is whether Fire Company is a local agency subject to the RTKL.  Both OOR and the trial court found Fire Company was a local agency.  Because the record is devoid of facts necessary for a meaningful review of the nature of the relationship between Fire Company and Clinton Township (Township), such that it can be determined if Fire

---

[1] This case was reassigned to the authoring judge on February 27, 2019.
[2] Act of February 14, 2008, P.L. 6, 65 P.S. §§ 67.101-67.3104.

Company is a local agency, we must vacate the trial court's Order and remand for development of the factual record.

## I.    Background

On February 16, 2017, Requester submitted a RTKL request to Fire Company, requesting various documents.  Specifically, Requester sought:

1. Copy(ies) of any and all written loan agreement(s) during the last ten (10) years between Clinton Township Volunteer Fire Company No. 1 (CTVFC) and any member(s) who received loans from CTVFC, including collateral provisions of loan(s), term(s) of loan(s), and rate of interest for loan(s).

2. Copy(ies) of any and all CTVFC meeting minutes during the last ten (10) years where loan(s) from CTVFC to any member(s) who received loans were discussed and/or approved.

3. Copy(ies) of any and all bank statement(s) during the last ten (10) years showing payment(s) of any and all loan proceeds from CTVFC to any member(s) who received loans.

4. Copy(ies) of any and all bank statement(s) during the last ten (10) years showing any and all loan payment(s) from member(s) who received loans to CTVFC.

5. Copy of Form 990 and all Schedules attached to Form 990 that were filed with the Internal Revenue Service by CTVFC for calendar year 2015.

6. An itemization of amounts billed to and received from the State Correctional Institut[ion] at Muncy and the Federal Penitentiary at Allenwood for ambulance services (basic life support) for each calendar year beginning in 1999 and ending in 2016.

7. Page(s) of loan document(s) between CTVFC and Muncy Bank and Trust Company showing date of loan origination, loan amount, rate of interest, and term of loan.

2

8. Copies of bills for electric service for each month of calendar year 2016.

(Reproduced Record (R.R.) at 2.)

Fire Company's Solicitor responded to the request, stating Fire Company was not a local agency and, therefore, was not subject to the RTKL. (*Id.* at 4.) Accordingly, Solicitor advised Fire Company would not respond to the request.[3] (*Id.*)

Requester filed a timely appeal to OOR. OOR did not hold a hearing, and neither party requested one. Based solely upon the parties' position statements, which are not part of the record, OOR issued its Final Determination on March 31, 2017. Therein, OOR acknowledged that courts of common pleas were split on whether a volunteer fire company was a local agency under the RTKL, but nonetheless concluded Fire Company was a local agency subject to the RTKL. In reaching that conclusion, OOR considered its prior decisions that found firefighting to be a governmental activity, as well as the treatment of volunteer fire companies as government agencies for purposes of immunity. OOR then found that Fire Company did not meet its burden of proving that the requested records were exempt from disclosure. Accordingly, OOR granted Requester's appeal and directed Fire Company to provide all responsive documents within 30 days.

Fire Company filed a timely petition for review with the trial court, which took no additional evidence. By Order dated August 9, 2017, the trial court denied Fire Company's petition, affirmed OOR's Final Determination, and directed Fire Company to provide all responsive documents within 30 days. In its Opinion in

---

[3] The letter further advised that Form 990 was a public document that was available on the internet and if Requester wanted Fire Company to provide a copy, there would be a 25 cent per page fee. (R.R. at 4.)

support of the Order, the trial court noted that the RTKL defines "local agency," in relevant part, as a "similar governmental entity," a term that is not defined. (Opinion (Op.) at 4.) "Despite the lack of an explicit definition of 'similar governmental entity' under the RTKL," the trial court reasoned, "a plain reading of the phrase considered in tandem with the way by which other statutory law defines 'local agency' leads to the conclusion that the Fire Company must be considered a 'similar governmental entity,' and therefore a 'local agency,' under the RTKL." (*Id.* at 8.) In reaching this conclusion, the trial court applied the same test that the Pennsylvania Supreme Court set forth in a footnote to a case involving the issue of whether a volunteer fire company was entitled to immunity from tort liability: "[a] volunteer fire company created pursuant to relevant law and legally recognized as the official fire company for a political subdivision is a local agency." (*Id.* at 8 (quoting *Guinn v. Alburtis Fire Co.*, 614 A.2d 218, 219 n.2 (Pa. 1992)).) The trial court then found that Fire Company operates pursuant to The Second Class Township Code (Township Code),[4] which "demonstrates both that the Fire Company was created pursuant to relevant law, and that it is recognized as the official fire company," thereby satisfying the test set forth in *Guinn*. (Op. at 8.) The trial court also found the Township is authorized by the Township Code "to make regulations for the government of fire companies, bar[] the organization and operation of fire companies unless approved by resolution by the board of supervisors, and require[] fire companies to submit annual reports of the use of appropriated mon[ies] to the [T]ownship." (*Id.*) In addition, the trial court found the Township provided Fire Company with funding. Thus, the trial court concluded that "[b]y taking on a government function and operating with funds appropriated by the [T]ownship, the

---

[4] Act of May 1, 1933, P.L. 103, *as amended*, 53 P.S. §§ 65101 – 68701.

4

Fire Company subjects itself to the disclosure of documents . . . pursuant to the RTKL."[5]  (*Id.*)  Fire Company now appeals to this Court.

## II.    Parties' arguments

On appeal,[6] Fire Company argues it is a private, nonprofit corporation that does not perform a government function.  Fire Company asserts it provides fire services to the Township, as well as other municipalities, but it does not govern, set policy, or control the actions of residents in those municipalities.  That function, Fire Company asserts, belongs to the Township and its supervisors.  According to Fire Company, once the Township decides what services are appropriate, the Township engages Fire Company to provide those services.  Therefore, Fire Company argues, the governmental function is carried out by the Township, not Fire Company.  Fire Company compares itself to any other contractor that enters into a contract with a municipality to provide a service.  Fire Company acknowledges that it is entitled to immunity under the act commonly referred to as the Political Subdivision Tort Claims Act (Tort Claims Act),[7] but claims immunity does not equate to a conclusion that it is a local agency under the RTKL.  To the extent it receives some public funds, Fire Company argues this does not make it an agency or instrumentality of the Township; otherwise, Little League baseball teams and local animal shelters that

---

[5] The trial court also concluded collateral estoppel did not preclude Fire Company from asserting it was not a local agency by Fire Company's failure to appeal another RTKL decision because Fire Company ultimately prevailed in that case on other grounds and therefore was not aggrieved and lacked standing.  (Op. at 5-6.)  The trial court also found insufficient evidence in the record to conclude Fire Company acted in bad faith to justify an award of attorney fees.  (*Id.* at 9.)  Requester did not appeal these determinations; therefore, these issues are not before us.

[6] Our review is "limited to determining whether findings of fact are supported by competent evidence or whether the trial court committed an error of law, or an abuse of discretion in reaching its decision."  *Kaplin v. Lower Merion Twp.*, 19 A.3d 1209, 1213 n.6 (Pa. Cmwlth. 2011).

[7] 42 Pa. C.S. §§ 8541-8542.

5

accept donations from the Township would also be subject to the RTKL. Fire Company argues if it was subject to the RTKL, it would have a chilling effect on membership. Finally, it asserts it already reports expenditures of taxpayer funds to the Township and there is no legal basis to require it to report private funds.

Requester responds that volunteer fire companies have been consistently held to be governmental or local agencies under other statutes, and, because they perform a governmental function, i.e., providing fire and emergency services to municipalities, they should be subject to the RTKL. Requester argues the trial court properly applied the test from *Guinn* and concluded Fire Company was created pursuant to relevant law, the Township Code, and is recognized as the official fire company of the Township. Requester points out that the Township provides Fire Company with funds and pays expenses on behalf of Fire Company. Requester claims the Township Code "recognize[s] that volunteer fire companies are an integral part of local municipal government and provide an important governmental function." (Requester's Brief at 9.) Requester notes the Township Code authorizes the Township to make rules and regulations related to fire companies and dictates how funds from the Township can be used. Requester also asserts Fire Company cannot exist without Township's approval. According to Requester, because Fire Company accepts public funds, considering it to be a local agency furthers the objectives of the RTKL.

Monroeville Volunteer Fire Co. No. 5 (Monroeville VFC) sought to intervene in this matter but was denied by order dated March 15, 2018. It was, however, permitted to file a brief as amicus curiae. In its amicus brief, Monroeville VFC argues that volunteer fire companies are not subject to the RTKL. It points out that, here, no facts have been presented because no hearings have been held. Monroeville

6

VFC asserts the facts would show that Fire Company was not created or incorporated by the Township but by a group of interested citizens. Further, it asserts that Fire Company is an independent nonprofit, similar to most other volunteer fire companies. It argues the Township does not participate in Fire Company's day-to-day operations; does not appoint, select, or approve members or officers; does not indemnify Fire Company or its members from claims, debts, or liabilities; members do not receive municipal benefits; and if Fire Company was to dissolve, its assets would not go to the Township. According to Monroeville VFC, Fire Company cannot raise or levy taxes and instead relies on fundraising, rentals, and donations to maintain its operations. In short, Monroeville VFC asserts the Township does not exercise financial or governmental control over Fire Company. It argues the purpose of the RTKL is to promote access to official government information and scrutinize actions of public officials, but those purposes are not advanced here. It asks the Court to either reverse the trial court's Order or vacate and remand for development of the factual record.

## III. Discussion

The RTKL defines an "agency" as "[a] Commonwealth agency, a local agency, a judicial agency or a legislative agency." Section 102 of the RTKL, 65 P.S. § 67.102. The parties do not dispute that Fire Company is not a Commonwealth, judicial, or legislative agency. Rather, they dispute whether a volunteer fire company is a local agency under the RTKL, which is a matter of first impression. If Fire Company is determined to be a local agency, it is subject to the RTKL. Section 302 of the RTKL, 65 P.S. § 67.302.

"Local agency" is defined as:

7

> (1) Any political subdivision, intermediate unit, charter school, cyber charter school or public trade or vocational school.
>
> (2) Any local, intergovernmental, regional or municipal agency, authority, council, board, commission **or similar governmental entity**.

65 P.S. § 67.102 (emphasis added).  It is the term "similar governmental entity," which is undefined, that is at issue in this case.

The courts have previously examined the treatment of volunteer fire companies under a number of other statutes.  For instance, in *Harmony Volunteer Fire Company & Relief Association v. Pennsylvania Human Relations Commission*, 459 A.2d 439, 443 (Pa. 1983), the Supreme Court noted the provision of fire and emergency services was governmental in nature and concluded a volunteer fire company is an employer under the Pennsylvania Human Relations Act.[8]  In another case, we determined firemen were not volunteers but were employees of a municipality under the Pennsylvania Labor Relations Act[9] when the municipality paid them an hourly wage; incorporated the fire department as a nonprofit; owned the building and most of the equipment; paid for expenses; appointed officers; and otherwise controlled operations.  *Borough of Emmaus v. Pa. Labor Relations Bd.*, 156 A.3d 384, 390-91 (Pa. Cmwlth. 2017).

However, the majority of the cases involve whether, and the extent to which, volunteer fire companies are protected by governmental immunity.  The courts have held on a number of occasions that they are entitled to immunity as local or government agencies.  *See*, *e.g.*, *Flood v. Silfies*, 933 A.2d 1072, 1078 (Pa. Cmwlth. 2007); *Wilson v. Dravosburg Vol. Fire Dep't No. 1*, 516 A.2d 100, 101-02 (Pa.

---

[8] Act of October 27, 1955, P.L. 744, *as amended*, 43 P.S. §§ 951-963.
[9] Act of June 1, 1937, P.L. 1168, *as amended*, 43 P.S. §§ 211.1-211.13.

8

Cmwlth. 1986); *Zern v. Muldoon*, 516 A.2d 799, 805 (Pa. Cmwlth. 1986). In reaching this decision, we have looked to the Tort Claims Act, which defines "local agency" as a "government unit other than the Commonwealth government." Section 8501 of the Judicial Code, 42 Pa. C.S. § 8501. The Judicial Code, in which the Tort Claims Act is contained, defines "government agency" as "[a]ny Commonwealth agency or any political subdivision or municipal or other local authority, or any officer or agency of any such political subdivision or local authority." Section 102 of the Judicial Code, 42 Pa. C.S. § 102. Because the provision of fire services is governmental in nature, we found volunteer fire companies are immune from claims. *Flood*, 933 A.2d at 1078; *Wilson*, 516 A.2d at 101-02; *Zern*, 516 A.2d at 805.

Although the courts have examined volunteer fire companies in other contexts and decided they were local or government agencies, the Supreme Court has cautioned that "an entity's status as an agency or instrumentality varies, depending on the issue for which the determination is being made." *Pa. State Univ. v. Derry Twp. Sch. Dist.*, 731 A.2d 1272, 1274 (Pa. 1999). For instance, in *Derry Township*, the Supreme Court held Penn State University was **not** an agency of the Commonwealth immune to real estate taxes, although it had been determined an agency of the Commonwealth for other purposes. The Supreme Court made this conclusion despite Penn State's receipt of public funds. The Supreme Court noted "[t]he Commonwealth funds countless programs and institutions, but few of these are so closely aligned with the government as to be agencies thereof." *Id.* For purposes of tax immunity, the Court held the "pivotal factor" was **control** by the Commonwealth, which was lacking. *Id.* at 1274-75.

We reached a similar conclusion in *Safety, Agriculture, Villages and Environment (S.A.V.E.), Inc. v. The Delaware Valley Regional Planning*

*Commission*, 819 A.2d 1235 (Pa. Cmwlth. 2003). In that case, we first addressed whether the Delaware Valley Regional Planning Commission was a Commonwealth agency under the Judicial Code, which would grant this Court jurisdiction over the matter. We held it **was** a Commonwealth agency under the **Judicial Code** but stated this conclusion was not determinative of the second issue in the case, whether it was also an "agency" under the former **Right-to-Know Act**.[10] *Id.* at 1241. We ultimately concluded it was **not** because it did not perform an essential governmental function. *Id.* at 1242.

Although the courts have stated that an entity's treatment as a local agency under one statute is not determinative of its treatment under another statute, *Derry Township*, 731 A.2d at 1274; *S.A.V.E.*, 819 A.2d at 1241, here, the trial court relied upon *Guinn*, a case involving immunity, to determine Fire Company was a local agency under the RTKL. Notably, in *Guinn*, the immunity of the fire company had already been *conceded* and was not in issue. The issue before the Supreme Court was whether that immunity extended outside of the scope of firefighting duties. The Supreme Court held it did and, in a footnote, stated that "a volunteer fire company created pursuant to relevant law and legally recognized as the official fire company for a political subdivision is a local agency." *Guinn*, 614 A.2d at 219 n.2. Based

---

[10] "Agency" was defined under the former act as:

> [a]ny office, department, board or commission of the executive branch of the Commonwealth, any political subdivision of the Commonwealth, the Pennsylvania Turnpike Commission, the State System of Higher Education or any State or municipal authority or similar organization created by or pursuant to a statute which declares in substance that such organization performs or has for its purpose the performance of an essential governmental function.

Section 1 of the Right-to-Know Act, Act of June 21, 1957, P.L. 390, *as amended*, *formerly* 65 P.S. § 66.1, *repealed by* Section 3102(2)(ii) of the Act of February 14, 2008, P.L. 6.

upon this statement, the trial court concluded Fire Company was also a local agency under the RTKL. Because the Supreme Court has counseled that "an entity's status as an agency or instrumentality varies, depending on the issue for which the determination is being made," *Derry Twp.*, 731 A.2d at 1274, we do not interpret its statement in a footnote in a case in which immunity was conceded as controlling whether volunteer fire companies are also local agencies under the RTKL.

Here, there is no dispute that Fire Company is a nonprofit corporation. Nonprofit corporations are governed by the Nonprofit Corporation Law of 1988.[11] Fire Company may operate pursuant to the Township Code, which requires a township to provide fire and emergency medical services to its residents and permits a township to make rules and regulations governing a fire company's operations, Sections 1553 and 1803(b) of the Township Code, 53 P.S. §§ 66553, 66803(b),[12] but that alone does not transform a nonprofit, volunteer fire company into an extension of the government. The organization remains a nonprofit, subject to the Nonprofit Corporation Law. *See, e.g.*, *Lacey Park Volunteer Fire Co. No. 1 v. Bd. of Supervisors of Warminster Twp., Bucks Cty.*, 365 A.2d 880, 882 (Pa. Cmwlth. 1976) (holding that while a municipality may merge or consolidate fire companies, the fire company, as a nonprofit, retains its interest in its real and personal property). There are a number of organizations subject to government regulation, particularly those that receive public funds, such as grants. To hold a privately incorporated nonprofit that is somehow regulated by the government to be an agency subject to the RTKL without regard to the extent of control exercised by the government or other factors could have far-reaching and unintended effects.

---

[11] 15 Pa. C.S. §§ 5101–6162.

[12] Section 1553 was added by Section 1 of the Act of March 17, 2008, P.L. 47, and Section 1803 was added by Section 1 of the Act of November 9, 1995, P.L. 350.

Therefore, we consider how other nonprofit corporations have been treated under the RTKL. In an analogous case, *In re Right to Know Law Request Served on Venango County's Tourism Promotion Agency and Lead Economic Development Agency*, 83 A.3d 1101 (Pa. Cmwlth. 2014) (*Venango County*), we evaluated whether a regional alliance of businesses, industry, and tourism, which was a private nonprofit, was a "similar governmental entity" to be considered a "local agency" under the RTKL. We set forth a number of factors to be considered when assessing an organization's status as a "similar governmental entity," including the degree of governmental control, the nature of the organization's functions, and financial control. *Id.* at 1108. Concerning the first factor, degree of governmental control, we held a court should review factors, such as "organizational structure, purposes, powers, duties and fiscal affairs." *Id.* Moreover, we noted that cooperation with the government is insufficient to establish control. *Id.* As for government function, we held that "[t]he function an entity performs weighs heavily in a local agency assessment. The function must be governmental, but it need not be . . . essential. To qualify as governmental, the function must be a substantial facet of a government activity." *Id.* at 1109. Finally, with regard to financial control, we noted that the less government financing, the less likely it was that there was government control. *Id.* Applying these factors, we determined the regional alliance was **not** a local agency under the RTKL.

*Venango County* relied upon this Court's unreported opinion in *Philadelphia Industrial Development Corporation v. Ali* (Pa. Cmwlth., No. 528 C.D. 2010, filed April 18, 2011) (*PIDC*).[13] In that case, we were faced with the issue of whether an

---

[13] *PIDC* is an unreported panel decision of this Court, which is cited in accordance with Section 414(a) of this Court's Internal Operating Procedures, which provides that an unreported

12

industrial development corporation was a local agency under the RTKL.  Like this case, *PIDC* turned on the interpretation of "similar governmental entity."  Applying the rules of statutory construction, including the doctrine *ejusdem generis*, we explained that "[g]enerally, local, intergovernmental, regional or municipal agencies, authorities, councils, boards, or commissions are government entities established by a political subdivision pursuant to statutory authorization."  *Id.*, slip op. at 8.  The industrial authority, we noted, was "not a division of . . . [or] a political subdivision itself; [its] members [were] not appointed exclusively by the governing body of a political subdivision; [it did] not require a delegation of authority from a political subdivision to promote economic development; and [it] cannot be disbanded by a political subdivision."  *Id.* at 9.  This Court's conclusion that the industrial authority was **not** a "local agency" was bolstered, we said, by Section 506(d) of the RTKL, 65 P.S. § 67.506(d),[14] which expressly "provided for the situation where an agency" contracts "with a party to perform a governmental function."  *PIDC*, slip op. at 9.  We explained that if the industrial authority was held

panel decision issued by this Court after January 15, 2008, may be cited "for its persuasive value, but not as binding precedent."  210 Pa. Code § 69.414(a).

[14] Section 506(d) provides:

(1)     A public record that is not in the possession of an agency but is in the possession of a party with whom the agency has contracted to perform a governmental function on behalf of the agency, and which directly relates to the governmental function and is not exempt under this act, shall be considered a public record of the agency for purposes of this act.

(2)     Nothing in this act shall be construed to require access to any other record of the party in possession of the public record.

(3)     A request for a public record in possession of a party other than the agency shall be submitted to the open records officer of the agency. . . .

65 P.S. § 67.506(d).

13

to be a local agency based upon its contract to provide services, this section "of the RTKL would be rendered meaningless." *Id.* at 10. Furthermore, we noted that "the **extent** to which a private party has been contracted by an agency is not determinative of whether the private party can or should be considered a 'local agency' under the law." *Id.* (emphasis in original).

Here, there is no factual record to evaluate the degree of governmental control, the nature of Fire Company's functions, and the financial control by the Township over Fire Company. *Venango County,* 83 A.3d at 1108. The record consists of Fire Company's Petition for Review filed with the trial court, which included copies of Requester's RTKL request, Fire Company's response thereto, Official Notice of Appeal to OOR, and OOR's Final Determination. The trial court took no additional evidence. It accepted briefs, and in his brief to the trial court, Requester makes several statements regarding the Township's funding of Fire Company and payment of certain expenses on Fire Company's behalf. (Record Item 7 at 6.) However, "statements in legal briefs and memoranda are not evidence this Court is required to consider." *Sch. Dist. of the City of Monessen v. Farnham & Pfile Co., Inc.*, 878 A.2d 142, 150 n.4 (Pa. Cmwlth. 2005). Because there is no evidence of record to support these statements, we cannot consider them. For similar reasons, we cannot consider Fire Company's assertions that it contracts with the Township and other municipalities to provide fire services or Monroeville VFC's statements that Fire Company was not created or incorporated by the Township but by a group of interested citizens; the Township does not participate in Fire Company's day-to-day operations; the Township does not appoint, select, or approve members or officers; the Township does not indemnify Fire Company or its members; members of Fire Company do not receive municipal benefits; if Fire Company was to dissolve, its

14

assets would not go to the Township; Fire Company maintains its operations through fundraising, rentals, and donations; or the Township does not exercise financial or governmental control over Fire Company. These are exactly the type of facts that are needed to determine the degree of governmental control, the nature of Fire Company's functions, and the financial control by the Township over Fire Company. Because they are lacking from the record, a remand is necessary so that the factual record can be developed. *See Christy v. Cranberry Volunteer Ambulance Corps, Inc.*, 856 A.2d 43, 52-53 (Pa. 2004) (ordering remand to determine whether local ambulance group is a local agency entitled to immunity).

On remand, the parties shall be prepared to produce evidence relevant to the degree of governmental control the Township exercises over Fire Company, including, but not limited to Fire Company's "organizational structure, purposes, powers, duties and fiscal affairs"; the function Fire Company performs and whether it is "a substantial facet of a government activity"; and the degree of public funding provided to Fire Company in relation to private funds. *Venango County,* 83 A.3d at 1108-09. It may very well be that, upon remand, the evidence shows the trial court was correct that Fire Company is a local agency under the RTKL, or it may not. At present, we simply do not know enough about the Township and Fire Company's relationship to evaluate the relevant factors. Accordingly, we vacate the trial court's Order and remand with direction to the trial court to remand to OOR so that a factual record can be developed and these factors considered.

 

 

_____

**RENÉE COHN JUBELIRER,** Judge

15

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Todd Pysher                      :

                                :

                                :

          v.                 :   No. 1237 C.D. 2017

                                :

Clinton Township Volunteer     :

Fire Company,                 :

                  Appellant    :

# O R D E R

**NOW**, May 8, 2019, the Order of the Court of Common Pleas of Lycoming County (trial court), in the above-captioned matter, is **VACATED**, and this matter is **REMANDED** with direction for the trial court to remand to the Office of Open Records for further proceedings.  Upon remand, evidence shall be accepted on the relationship between Clinton Township (Township) and Clinton Township Volunteer Fire Company (Fire Company), including, but not limited to the degree of governmental control the Township exercises over Fire Company, the nature of Fire Company's function, and the financial control by the Township over Fire Company.

      Jurisdiction relinquished.

 

                                _____

                                **RENÉE COHN JUBELIRER,** Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Todd Pysher                          :
                                     :
        v.                           :    No. 1237 C.D. 2017
                                     :    ARGUED: December 11, 2018
Clinton Township Volunteer           :
Fire Company,                        :
                Appellant            :


BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge
           HONORABLE ANNE E. COVEY, Judge
           HONORABLE ELLEN CEISLER, Judge


CONCURRING AND DISSENTING
OPINION BY JUDGE CEISLER                        FILED: May 8, 2019


        Consistent with my dissenting opinion in *Bohman v. Clinton Township Volunteer Fire Company*, __ A.3d __, (Pa. Cmwlth., No. 1238 C.D. 2017, filed May 8, 2019), I would affirm that part of the order of the Court of Common Pleas of Lycoming County (Trial Court) which determined that the Clinton Township Volunteer Fire Company is a local agency subject to the Right-to-Know Law (RTKL).[1] I would remand this matter, however, to the Trial Court for the purpose of determining whether the records requested by Todd Pysher constitute records as defined by the RTKL.



                                     _____
                                     ELLEN CEISLER, Judge


---

[1] Act of February 14, 2008, P.L. 6, 65 P.S. §§ 67.101 – 67.3104.